## HUNT and Others *v.* HARDING.*

Where a mortgage is executed to secure the payment, when due, of several promissory notes, falling due at different times, it may be foreclosed upon default of payment of the note first due.

*Quære*, whether the mortgagee may, by the terms of the mortgage contract, waive the benefit of, or control, this rule.

Where the mortgage is conditioned in the usual form, "to secure the payment of the notes when they become due," the contract does not assume to control the rule.

The statute enters into every mortgage contract made under it, at all events, unless the terms of the contract exclude it.

---

* A petition for a rehearing of this case was overruled.

Nov. Term,
1858.

HUNT
v.
HARDING.

Friday,
December 3.

APPEAL from the *Marion* Circuit Court.

PERKINS, J.—Complaint to foreclose a mortgage. Judgment of foreclosure, and appeal.

There was a general denial of the complaint, but without oath, by a part of the defendants, and a part made default.

The condition of the mortgage was—

"To secure the payment, when they become due, of five promissory notes of this date [the date of the mortgage], made by said *Hunt* to said *Harding*, the first one being for 120 dollars, due *June* 1, 1855; the second, for 880 dollars, due *February* 1, 1856, with interest from date; the third, for 1,000 dollars, due *February* 1, 1857; the fourth, for 1,000 dollars, due *February* 1, 1858; the fifth, for 1,000 dollars, due *February* 1, 1859; said last three notes without interest till due; and the mortgagor expressly agrees to pay the sum of money above secured, without relief from valuation laws."

This suit was instituted after a part, but before all, of the notes became due, and it is contended that it was prematurely brought—that the mortgage could not be foreclosed till all of the notes were due. It was decided in *Smith* v. *Stewart*, 6 Blackf. 162, that if the condition of the mortgage did not contain an express covenant to pay the money, it would not sustain an action of debt or covenant for the money. And see 2 R. S. p. 239. The express covenant in this mortgage would be sufficient to bring it within that decision; but it can have no bearing, as it is worded, upon the right to foreclose.

In *The State Bank* v. *Tweedy*, 8 Blackf. 447, we find it laid down, that, "In this state, if no statute interpose, a mortgage securing a debt payable by installments, may be foreclosed on default of payment of the first installment, and the mortgaged property sold for the payment of that installment. *Andrews* v. *Jones*, 3 Blackf. 440. By our Revised Statutes of 1843, p. 461, such is, from that time, made the law by express enactment. From 1831 to 1843, embracing the period in which the mortgage in this case was executed, we had a statute prohibiting the foreclosure

of mortgages till the last installments of the debts speci-
fied in them became due; but it was decided in *Youse* v.
*M' Creary*, 2 Blackf. 243, that, during the same period, if
the mortgagee held notes for the payment of the money
secured by the mortgage, he might proceed at law upon
them, as they became due, and sell the mortgaged prem-
ises on execution; and that the purchaser at such sale
would take a title, free from the incumbrance of the mort-
gage. The law, then, may be stated in general terms to
be, in this state, that the holder of the first of several notes
secured by a mortgage, may, if he choose, when that note
becomes due, enforce the full payment of it out of the
mortgaged premises, they being sufficient for that pur-
pose," &c.

Under the code of 1843, mortgages, the terms of the
conditions in which were like the present, were foreclosed
before the last installments became due. *Greenman* v.
*Pattison*, 8 Blackf. 465.—*Lacoss* v. *Keegan*, 2 Ind. R. 406.
— *Cecil* v. *Dynes, id.* 266.—Ind. Dig., pp. 586, 587.

In the code of 1852, the provision of law authorizing
the foreclosure of mortgages upon the coming due of a
single installment, is reënacted. 2 R. S. p. 176. So that,
both by common and statute law, a suit for such fore-
closure may be maintained in this state.

But it is contended, in a brief of great research and abil-
ity, that this provision of the law may be waived by the
mortgagee, and that the terms of the mortgage contract
may contain such waiver, or, in other words, may control
this principle of law; and, perhaps, this may be so; and it
is further insisted that the contract in this case, does as-
sume to control it. This is the question. We cannot see
that it does. The condition is in the usual form—the
mortgagor executes it "to secure the payment of the notes
when they become due"—that is, plainly, as they become
due; and when one of them falls due and remains unpaid,
the condition, as to that note, is broken, and both the com-
mon law and statute say that when one of the notes or
installments so becomes due and remains unpaid, the
mortgage may be foreclosed. This statute certainly enters

into every mortgage contract made under it, at all events, unless the terms of the contract exclude it. We see nothing in the terms of the mortgage contract in question which indicates that the parties intended to take it out of the operation of the statute. It is plain from the whole statute that it is not to be limited in its operation to mortgages that stipulate that the whole debt shall be due on failure to pay a single installment.

*Per Curiam.*—The judgment is affirmed, with 1 per cent. damages and costs.

*N. B. Taylor*, for the appellants (1).

*D. M'Donald* and *A. G. Porter*, for the appellee (2).

(1) The counsel for the appellants made the following points :

I. In every mortgage, like the one in this case, there are what may be termed two securities—first, the personal security or obligation to pay the debt, which is the notes; second, the landed security. The personal security, that is, the notes, may be resorted to and their collection enforced by suit without affecting the landed security. The landed security may be altogether waived without affecting the personal security, and the mortgagee may resort to the one before proceeding to enforce the other. These principles are so obvious and well settled as not to require authority. But see 1 Blackf. 387; 2 R. S. 1852, p. 177, § 640.

II. The time when, or at what time, a mortgage becomes forfeited so as to authorize proceedings to make the landed security available, depends alone upon the terms of the mortgage. 2 R. S. p. 176, § 631.—8 Porter (Ala.), 284. —3 Blackf. 440.—6 *id.* 470.

III. Section 637, 2 R. S. p. 176, does not prohibit or restrain the parties to a mortgage from making their own covenants or conditions, but must be construed with § 631, and applies only to such mortgages as by their terms are forfeited on the non-payment of a single note, so as to authorize proceedings to make the landed security available. 3 Blackf. 440.—8 Porter (Ala.), 284.

IV. At common law, a bond or mortgage given to secure the payment of a sum of money by installments, might be proceeded upon on the non-payment of a single installment, for the whole amount, and judgment for the whole amount obtained, unless the case came within the equity of 4th and 5th *Anne.* But it must be borne in mind that by the express terms of these instruments, the failure to pay a single installment absolutely forfeited the instrument; and in the one case the whole penalty immediately became due, and in the other the estate became absolute. 3 Blacks. Comm. 435.—1 Strange, 515.—2 *id.* 814, 927.—3 Burr. 1370.—1 M. and S. 706.—1 Bibb, 149.—1 Johns. Ch. 617. —3 Blackf. 440.—2 B. Mon. 204.

V. The language of this mortgage is, "to secure the payment, when they shall become due, of five promissory notes." "When," in this connection, means "at the time," or "after the time." It is only in one of those two senses it can be used. "They" denotes "the things" spoken of; as, in this

case, "the five promissory notes;" and it denotes the five promissory notes spoken of, not separately or singly, but as a whole or entirety. "Become," in its connection, means "shall be," or "come to be." The words "when" and "as" are not synonymous. The adverbial phrase "when as" is sometimes used, and means "at the time when," "what time;" but this is not to the point. But suppose "when" to have the same meaning in the sentence as the word "as." "As," in itself, does not, any more than the word "when," have a several signification, and put in the place of "when," its plain and proper meaning is nothing more nor less than "at the time," or "at the same time;" it is not "at the times," "at the same times," nor "at the time they severally." The word "as" in the sentence would not admit of that several meaning; the word "when" will certainly not. The word "severally," or some equivalent, has, in either case, to be supplied by intendment. The mortgage is, therefore, given "to secure the payment of the five promissory notes, when (at the time, or after the time,) they (the five promissory notes,) become (shall be, or come to be,) due." The mortgage, then, is only forfeited so as to authorize proceedings to make the landed security available, that is, to foreclose the mortgage and obtain an order for the sale of the land at the time the five promissory notes come to be due; for the mortgage, by its terms, has fixed a single time in the future, and one time only, when the landed security is to become available; and that single period of time is at or after the time that the five promissory notes, as a whole, come to be due; and that one time can happen at one period only, that is, when the last note is due.

VI. This view does not conflict with any of the decisions of the Supreme Court of this state. The cases in which the question is supposed to have been decided are, *Cecil* v. *Dynes*, 2 Ind. R. 266; *Greenman* v. *Pattison*, 8 Blackf. 465; and *The State Bank* v. *Tweedy*, id. 447.

In the case of *Cecil* v. *Dynes*, the question was not made. SMITH, J., who delivered the opinion of the Court, says: "There is no brief for the defendant in error on file; and we are not informed upon what grounds the bill was held by the Court below to be insufficient." But the terms of the mortgage precluded the question altogether. The allegation in the bill was, "and your orator further represents that the said *Dynes*, to secure to your orator the payment of said sum of 1,562 dollars, 87 cents, according to the tenor and effect of said notes or writing obligatory, executed to your orator," &c. The proviso in the mortgage was, "that if the said *Dynes* shall well and truly pay to said *Cecil* the full and just sum of 1,562 dollars, 87 cents, &c., in manner particularly specified in three several notes or obligations bearing even date herewith, executed by me to the said *Cecil*, that then, and from thenceforth, these presents shall be void, else to remain in full force." See Trans. on file in Clerk's office of Supreme Court.

To the same effect is the case of *Greenman* v. *Pattison*. The question before the Court was, whether the act of 1843, concerning mortgages, contemplated a sale of the whole of the mortgaged premises where only a part of the debt was due, unless it would be "most beneficial" to both parties. The proviso in this case was, "that if the said *Charley F. Greenman*, his heirs, &c., do well and truly pay, or cause to be paid, to the said *Thomas J. Pattison*, his executors, &c., the said debt of 400 dollars, with interest, within the time above limited, without any defalcation or further delay, then, and from thenceforth, the said indenture, and all the estate thereby granted, shall cease, and be abso-

lutely void and of none effect, anything thereinbefore contained to the contrary notwithstanding; but in case of failure on the part of the said *Greenman* to make the payments aforesaid, or either of them, the said indenture of mortgage, and the estate thereby granted, to be and remain absolute and in full force and virtue in law." See Trans. on file in Clerk's office of Supreme Court.

In the case of *The State Bank* v. *Tweedy*, there were five notes, payable at different times, secured by the mortgage. The payee assigned three of the notes to *A.*, and he afterwards assigned the other two to *B.*, who had no notice of the previous assignment to *A.* The notes assigned to *B.* became due before the others. The question before the Court was, in what order were these notes payable out of the fund arising from the sale of the mortgaged premises. The Court decided that they were payable according to the order of time in which they fell due, without any reference to the notice of assignment. The proviso in the case of *The State Bank* v. *Tweedy*, is almost *verbatim* the same as that in the case of *Greenman* v. *Pattison*. See Trans. on file in Clerk's office of Supreme Court.

These cases are, therefore, entitled to no weight in the decision of this question. By the express terms of the mortgage in each, a failure to pay a single note worked an absolute forfeiture, so as to authorize proceedings to make the landed security available.

(2) Counsel for the appellee argued as follows:

The third error assigned is, we have no doubt, the one on which the appellants rely. They contend that the phrase in the mortgage, "to secure the payment when they [the notes] become due," means, to secure the payment of all the notes when the last becomes due.

This construction singularly perverts the language employed. How could the mortgage secure the payment of the notes when they became due, unless it secured the payment of each note when it became due; or, in other words, the payment of the notes when they respectively became due? The construction of the appellants would be, that securing payment of notes falling due at different periods, is securing the payment of the last when it becomes due, and all the rest after they become due.

Suppose a testator having children of the ages of one, five, ten, and twenty years respectively, were to provide by his will that they should have 1,000 dollars each when they became of age, would anybody contend that the eldest should not receive his 1,000 dollars until the youngest had attained to majority?

The construction of the Courts has always been, that upon mortgages like the present, there is a right of foreclosure on the non-payment of any installment; and it would indeed be a disaster, if the fanciful interpretation of the appellants were now adopted.

Mr. *Hilliard,* in his treatise on the law of mortgages, says: "Under an ordinary mortgage of land for an aggregate debt, payable in installments, the mortgagee, upon default in any payment, may enter or bring an ejectment, and retain possession of the whole, subject to an account for the profits; because, the condition being indivisible, a failure to pay any part of the debt is, in law, a forfeiture." 2 Hill. Mortg. 2d ed., 164. And, again, "It was early held in *Massachusetts,* that to an action upon a mortgage, securing a note payable by installments, it is no defense that all the installments are not due.

The Court said there was nothing in the objection, and that it had been repeatedly overruled." *Id.* 166, citing *Estabrook* v. *Moulton,* 9 Mass. R. 258.

*Cecil* v. *Dynes,* 2 Ind. R. 266, and *Lacoss* v. *Keegan, id.* 406, are also precisely in point. They were both suits for foreclosure for the non-payment of the first of several notes secured by mortgage.

In *Cecil* v. *Dynes,* the Court say, that "under the statute [similar to the present] a bill may be filed to foreclose, when any single note or installment secured by the mortgage becomes due." By referring to the transcript in that case, the Court will find that the condition of the mortgage was as follows:

"Provided that if I, the said *William H. Dynes,* my heirs," &c., "shall well and truly pay to," &c., "his heirs," &c., "the full and just sum of 1,562 dollars, 87 cents, on or before the first day of *March,* 1850, together with all lawful interest and costs that may accrue upon the same, in manner particularly specified in three several notes bearing even date herewith, executed by me to said *Cecil,* then," &c., "these presents shall be void." The notes were as follows: One for 562 dollars, 87 cents, fell due in *March,* 1848; another, for 500 dollars, in *March,* 1849; and another, for 500 dollars, in *March,* 1850.

The condition of the mortgage sued upon in *Lacoss* v. *Keegan* was as follows:

"Provided always, and these presents are upon this express condition, that whereas the said *John Lacoss* has executed to *Michael R. Keegan* his three promissory notes, of even date herewith, for the payment of the following sums of money, at the times following: 66 dollars on or before," &c., "and 68 dollars on or before," &c., "all with interest," &c. "Now, if the said *John Lacoss* shall pay said sums of money to," &c., "when the same shall become due, then these presents to be void," &c. "And provided further that said *John Lacoss* shall hold and enjoy quiet and peaceable possession," &c., "until default shall be made in the payment of the aforesaid sum of money," &c.

These cases leave no doubt that the appellee, in this case, had the right to foreclose as he did.