# HENRY E. COOPER *v.* ISLAND REALTY COMPANY, LIMITED, and JOSEPH A. GILMAN.

## APPEAL FROM GEAR, CIRCUIT JUDGE, FIRST CIRCUIT.

.SUBMITTED AUGUST 3, 1904.        DECIDED AUGUST 16, 1904.

### FREAR, C.J., HARTWELL AND HATCH, JJ.

·COVENANT AGAINST ENCUMBRANCES—*taxes.*

"A" sold to "B" on May 11, 1900, certain land, with covenants against encumbrances. Taxes for the year, which were assessed on January 1 against the grantor, became due on September 1. The taxes were paid by the grantee. The tax did not become a lien until September 1. Held that there was a breach of covenant, the lien owing its existence to facts existing on the 1st of January.

MORTGAGE—*payment of taxes by mortgagor.*

To obtain the right to charge any portion of taxes against a mortgagee, a mortgagor paying taxes must make the return directed by the second paragraph of section 831 of the Civil Laws.

.PAROL AGREEMENT.

An alleged contemporaneous parol agreement set up in this case is held not to have been shown to have been the act of the parties.

MORTGAGE—*foreclosure for default in payment of interest—-absence of stipulation maturing debt.*

A mortgage may be foreclosed for default in payment of interest.. Upon such foreclosure, even in the case of the absence of a stipulation that the entire debt shall at once mature, the mortgagee may collect the whole debt, principal as well as interest, from the proceeds of sale. *Howell v. Western Railroad Co.*, 94 U. S. 463, followed.

DO—*foreclosure sale—in lots or as a whole.*

It is within the discretion of the court based upon the showing made by the evidence to decree a sale of the mortgaged land in lots, or as a whole.

FORECLOSURE—*decree should allow redemption up to date of sale.*

A decree of foreclosure should allow redemption of the default, and a payment of the sum in arrears, at any time up to the date of the foreclosure sale.

FORECLOSURE SALE—*for cash only.*

A foreclosure sale should not be authorized on credit.

DO—*counsel fee.*

Counsel fees in foreclosure suits can not be allowed unless stipu-- lated for in the mortgage.

DO—*plaintiff a bidder.*

A plaintiff in a foreclosure suit should be allowed to be a bidder at the foreclosure sale.

## OPINION OF THE COURT BY HATCH, J.

This is an appeal from a decree of foreclosure and sale of a mortgage given by the Island Realty Company, Limited, to the plaintiff. The mortgage is dated the 11th day of May, 1900, and is for the sum of $70,000, the same being a part of the purchase price of certain tracts of land situated in Manoa, Oahu, conveyed by the plaintiff to said mortgagor by deed of the same date. The note, to secure which the mortgage was given, was made payable on or before the 11th day of May, 1905, with interest at six per cent. per annum. The mortgage contains agreements by virtue of which the mortgagor was authorized to sell portions of the mortgaged premises for cash and upon credit, accounting to the mortgagee for three-quarters of the sums received for the same; the mortgagee agreeing that on receipt

of three-quarters of the purchase price of the lots sold he would release the same from the operation of the mortgage.

The provision in the mortgage in regard to foreclosure is as follows: "Upon any failure by the mortgagor to pay the said sum hereby secured, or the interest thereon, or to otherwise comply with its agreements herein contained, the mortgagor shall have the right to foreclose this mortgage by mortgage fore-closure suit in any court having jurisdiction thereof."

The decree found that the allegation in the bill in regard to default in the payment of interest was supported by the proof, and further found that there is due to the plaintiff on said mortgage the sum of $69,754.40. It was also found that the defendant J. A. Gilman was the holder of a second mortgage on said premises on which is due the sum of $21,722.03. Under the decree a commissioner was appointed to conduct a foreclosure sale of the mortgaged premises: The defendants appeal.

It is contended first, by the defendant, the Island Realty Company, Limited, that the trial judge erred in not deducting from the amount found to be due the plaintiff the sum of $1,000, the amount of taxes for the year 1900, which was paid by said defendant on the 14th day of November, 1900. The tax was returned and the assessment made against the plaintiff as of January 1, 1900. The conveyance was made on May 11, 1900, and the tax became a lien upon the premises on the 1st day of September, 1900. The appellant claims that the deduction should have been made on two grounds; first, "that the failure to pay was a breach of the covenant in the deed, that the premises described therein were at the date of said deed "free, clear and discharged, unencumbered of and from all former grants, titles, charges, estates, judgments, liens, taxes, assessments and encumbrances of what nature or kind soever." Second, "that the tax was the debt of the plaintiff which the defendant paid in order to remove an encumbrance on its land, and therefore paid for a reasonable cause and not officiously or voluntarily."

The principle involved in the first of the above contentions is fully supported by *Jones v. Norris*, 8 Haw. 71. In that case

it was held that the work of the assessor relates to the first of July and the charge is fixed on that day whatever may be the subsequent date when the assessor makes up the assessment of individuals and completes the entire district. Since that decision the date of assessment has been thrown back from July first to January first, and the tax has been made an express lien upon real estate from September first. The enactment of the provision that the lien shall attach on the first day of September in each assessment year and shall continue for two years does not imply that a change of ownership between January first and September first would defeat the lien; neither does it imply that the owner on January first, against whom the assessment is made, becomes relieved of personal liability on September first. The foundation facts on which the lien is built must exist prior to September first. The language of the covenant in the present case comprehends not only liens, but assessments. An assessment was outstanding against the land on the date of the sale to defendant company. We do not desire, however, to base our decision on any mere question of wording. In our view the covenant against encumbrances is broken if at the time it was made an assessment for taxation had been made against the estate, notwithstanding the provision of the statute that the lien attaches on September first. The authorities are diametrically opposed on this subject. We consider, however, that the rule in *Jones v. Norris* should be followed. This is also clearly the law in Massachusetts.

In *Cochran v. Guild,* 106 Mass. 29, it was held that taxes on land are an encumbrance thereon from the date of their assessment. By statute of Massachusetts the tax is made a lien upon land on the date the tax list is committed to the collector. The court by Chapman, C.J., says: "On May 1, 1868, when the taxes were assessed, the land became liable for their payment. It is true that payment was not to be made till the tax bills should be made out and put into the hands of the collector, and all the necessary preliminary steps should be taken on his part. It is also true that they might be collected otherwise than by a

sale of the land, and thus its liability might terminate, or it might cease by lapse of time. But they have not been paid otherwise, and the purchaser has been compelled to pay them. He was obliged to pay them in order to relieve the land from a liability to which it was subject when he took his conveyance with the covenant against incumbrances. These taxes had all the characteristics of an incumbrance. What constituted the incumbrance was the present paramount right of the city to hold the land subject to the payment of the taxes already assessed, if they should not be paid otherwise." "Taxes are assessed as of the first day of May in each year; and, on real estate, 'to the person who is either the owner or in possession thereof on the first day of May.' Gen. Sts. C. 11, §8. They 'constitute a lien thereon for two years after they are committed to the collector.' Gen. Sts., C. 12, §22. To be effectual, this lien must relate back to the first day of May. Such, doubtless, was the intent, and should be the construction of this provision of law; although practically the tax is not assessed until some weeks or perhaps months later." *Hill v. Bacon,* 110 Mass. 387-388. "Upon this question, the construction to be given to the statute must be such as accords with the interpretation given by this court to similar provisions relating to the collection of taxes. By the Gen. Sts.,. C. 12, §22, taxes assessed on real estate are declared to be a lien thereon for two years after they are committed to the collector; and yet, in *Cochran v. Guild,* 106 Mass. 29, in answer to the objection that they were not an incumbrance until so committed, it was held that they were so from the first of May, the date of their assessment, because the land then became liable for their payment." *Carr v. Dooley,* 119 Mass. 295.

The appellant also claims that the trial judge erred in not deducting or allowing to it the payment of taxes on the mortgage made by it October 21, 1901, and similar taxes paid by it on the 8th day of January, 1904, together with a penalty of $130. It may be said in passing that in no event can the amount of the penalty be allowed. The obligation was upon the defendant company to pay the taxes in the first instance. The penalty

accrued through its default in doing this. The claim for the allowance of these amounts is based upon Sec. 831, Civil Laws, which is as follows:

"The mortgagor of any property shall, in respect of such property, be liable to taxation only on the difference between the whole value of the property mortgaged and the amount of money owing on the mortgage of the property.

"Provided always, that the mortgagor shall append to the statement of the property belonging to him and required by this Act a statement of the date of the mortgage and of the amount secured thereby, and the names of the respective mortgagees.

"In respect of the amount of money secured by such mortgage he shall pay the tax thereon, which payment shall be deemed to be a payment made by the mortgagor to the mortgagee on account of interest, or of principal and interest, as the case may be, and all moneys so paid by a mortgagor shall be allowed for in the account between the mortgagor and mortgagee."

The question is as to the proper construction of this statute. The defendant company claims that a proper reading of the statute gives it the absolute right to treat this payment of taxes on the amount secured by the mortgage as a payment of interest, regardless of whether it filed a statement of the date of the mortgage and of the amount secured thereby and the names of the respective mortgagees as provided in the Act. On the other hand, the plaintiff claims that unless the requirements contained in the proviso as to the filing of such statement are complied with, the mortgagor has no right to recover the amount of such tax from the mortgagee. It is admitted that the defendant company, as to the period covering the items in dispute, did not file any statement with the tax assessor as to the mortgage.

In the absence of special statutory provisions, the mortgagor in possession would ordinarily be held liable for the payment of all taxes upon mortgaged property. The general rule, therefore, requires the mortgagor or his grantee to pay the taxes on mortgaged premises. *Ralston v. Hughes,* 13 Ill. 470; *Medley v. Elliott,* 62 Ill. 532.

The construction contended for by the defendant company

leads to a disregarding of the proviso contained in said act. Has the court the authority to disregard this proviso? Realizing the difficulty of this, the defendant concentrates its attack upon the proviso in question. It is contended that the word "provided" does not necessarily impose a condition; citing *Chafin v. Harris,* 8 Allen 596. Cases are cited showing the application of a restricted construction to a proviso; and it is claimed that the proviso in question is in fact an independent enactment, directory only in its nature, and not controlling the other operations of the statute above set out; and that at most it qualifies only the paragraph or clause immediately preceding it. Granting that the word "provided" does not necessarily impose a condition, it may do so, and it clearly does in this instance. The effect of a proviso is thus stated in *Voorhees v. Bank of the U. S.,* 10 Pet. 449. In that case certain acts required to be done previous to a sale were prescribed by proviso and were held to be conditions precedent, it being stated by Mr. Justice Baldwin that "the effect of a proviso in deeds and laws is to declare that the grant made shall not operate, or the authority shall not be exercised, unless in the case provided."

In *Minis v. U. S.,* 15 Pet. 423, Judge Story says: "The office of a proviso generally is either to except something from the enacting clause or to qualify or restrain its generalities or to exclude some possible ground of misinterpretation of it, as extending to cases not intended by the legislature to be brought within its purview."

In *Austin v. U. S.,* 155 U. S., at p. 431, the court says: "While we consider that the law does not attach a fixed and invariable meaning to a proviso, we think it clear that this proviso negatived the authority granted beyond the limit defined. It operated upon the entire enacting clause, and made loyalty a jurisdictional fact, since the consent to the prosecution of the suit was given upon the condition that that fact should be established."

The appellant company is forced to rely upon the above act in order to claim any recovery against the plaintiff. By said

act a new authority was conferred upon it. This authority could only be exercised upon proof of a compliance with the terms set out in the act. The qualification contained in the act is controlling as clearly as was the proviso in *Austin v. United States.* The object which the legislature had in view in requiring the statement mentioned in the proviso, or whether or not the filing of such a statement serves any useful purpose, is not a matter of controlling importance. What is plain, however, is the fact that the law in order to give a mortgagor the benefit of its provisions, requires certain acts to be done by him. The court has no option in the premises. It can not disregard the plain words of the law on the pretext of giving to it a "sensible construction," or one that will occasion no inconvenience, or that will not cause the doing of a "vain thing." Granting that the legislature will not be presumed to require the doing of a "vain thing," the presumption is still stronger that the legislature intends every clause of a statute to have some effect; and that the construction of such statute, if possible, must be such that the whole will stand. *San Diego v. Grannis,* 77 Cal. 511; *Browne v. Turner,* 174 Mass. 150.

"All acts of the legislature should be so construed, if practicable, that one section will not defeat or destroy another but sustain and support it." *Bernier v. Bernier,* 147 U. S. 242.

To give the act in question such a construction as is defined in *Bernier v. Bernier,* and at the same time a consistent and harmonious one, it is necessary to construe the words beginning with "provided always" as a condition; and to hold that the condition qualifies the entire section, that which follows, as well as that which precedes, the proviso. The language of the third paragraph closely couples up this paragraph with what precedes. The opening words are "in respect of the amount of money secured by *such* mortgage," etc. By "such mortgage" is meant a mortgage which has been returned and named in an appended statement as required by the proviso immediately preceding.

It is not a universal rule that a proviso applies only to the paragraph or clause immediately preceding it.

"A statute should be so construed as to give some effect and operation to each word or phrase, and all relating to the same subject matter should be construed together. Though the proviso is found in a section and immediately follows a particular phrase, its effect is not necessarily limited and restricted to the same section. * * * When from the context, and a comparison of all the provisions relating to the same subject matter, it is manifest that the object and intent were to give the proviso a scope extending beyond the section, and effect beyond the phrase immediately preceding, it will be construed as restraining or qualifying preceding sections relating to the subject matter of the proviso, or as tantamount to an enactment in a separate section, without regard to its position and connection." *Wartensleben v. Haithcock,* 1 So. 38, 40.

See also *Smith v. Hamakua Mill Co.,* 15 Haw. 648, where a proviso in regard to inheritance by kindred of the half blood is extended by construction throughout the whole law of descent.

The defendant company has failed to comply with the requirements of this statute, and can not be allowed the deduction claimed. This view of the matter renders any consideration of the question of voluntary payment unnecessary.

The plaintiff further claims that the trial court erred in excluding the testimony offered by plaintiff of a contemporaneous parol contract between the parties, by which the mortgagor agreed to pay all taxes. This contention is also in our opinion without merit. The testimony offered upon this subject was properly ruled out. The general rule is expressed in the late case of *Union Selling Co. v. Jones,* 128 Fed. 672, as follows: "Where a contract has been reduced to writing, and imports on its face to be a complete expression of the whole agreement, it will be presumed that the parties have introduced into it every material item and term; and hence parol evidence is inadmissible to add another term to the agreement, though the writing contains nothing on the particular point to which the parol evidence is directed. The rule forbids to add by parol where the writing is silent, as well as to vary where it speaks; and the legal import can no more be varied by parol than can what is written." This rule is subject to possible qualification,

as in *Carr v. Dooley,* 119 Mass. 295, upon an offer to prove an independent agreement with reference to a distinct and separate matter, though founded upon a consideration embraced in the price of the land. It would, however, be incumbent upon the plaintiff to show an agreement on the part of the defendant corporation, the Island Realty Company, Ltd., to assume the burden of the taxes. This the evidence entirely fails to do.

The appellant corporation next contends that the decree is clearly wrong in accelerating the maturity of the debt, and it claims that "where there is no stipulation maturing the entire debt, on default of the payment of interest, foreclosure can only be had for the interest due;" and also that "where there is no clause accelerating the maturity of the debt, the court can not engraft one on the contract; and even where one exists its provisions must be strictly followed;" and also that "there is no right to foreclose for non-payment of interest save for the interest." We are referred in support of these three propositions to the following authorities: Encyclopedia Pleading and Practice, Vol. 9, p. 240; *McFadden v. Mayes Landing Co.,* 49 N. J. Eq. 176; Wiltsie on Mortgage Foreclosures, Sec. 42; *Bank of S L. Obispo v. Johnson,* 53 Cal. 99.

The New Jersey case, *McFadden v. Mayes Landing Co.,* fully supports the proposition and the law is undoubtedly settled in that state, as the appellant corporation contends. In California the law has also been held the same way in *Bank of S. L. Obispo v. Johnson,* though by a divided court. In Vol. 9, Ency. Pl. and Pr., at p. 240, the proposition is laid down as defendant appellant contends. Wiltsie on Mortgage Foreclosures, however, in the latter part of the paragraph cited by defendant appellant, to wit, paragraph 42, says: "The better doctrine seems to be that the interest falling due yearly or at other stated periods, on a note secured by mortgage, is an installment of debt, and that the mortgage may be foreclosed to enforce its payment, because the mortgage must have been given to secure the interest as well as the principal, and the law will not withhoold a remedy until the period elapses for the maturity of the whole debt."

*Morgenstern v. Klees,* 30 Ill. 422, is cited in support of this view and correctly cited.

The cases cited, however, in Vol. 9, Ency. Pl. and Pr., except from New Jersey and California, do not very clearly support the text. In Indiana the matter is regulated by statute; and of the remaining cases the following are not inconsistent with the opposite view.

*Dederick v. Barber,* 44 Mich. 19, holds "Where a debt is made payable after several years, but the interest is payable annually, a bill to foreclose the mortgage which secures the debt may be properly filed after the expiration of the year, if interest is in arrears."

*Scheive v. Kennedy,* 64 Wis. 564, holds "A mortgage may be foreclosed for breach of condition thereof by failure to pay interest on the debt secured, although the mortgage itself does not provide for such foreclosure."

*Hunt v. Harding,* 11 Ind. 245, holds "Where a mortgage is executed to secure the payment, when due, of several promissory notes, falling due at different times, it may be foreclosed upon default of payment of the note first due."

*Gladwyn v. Hitchman,* 2 Vern. 135, holds "A mortgage is forfeited by non-payment of interest."

In *West Branch Bank v. Chester,* 11 Pa. St. 282, the court goes into a historical review of the subject. On page 290 the court says: "In England a default in payment of half a year's interest on the appointed day is a sufficient breach of condition to enable the mortgagee to foreclose. Coote on Mortgages, 518; and see *Gladwyn v. Hitchman,* 2 Ver. 135. With us, the remedy is so modified that we can not foreclose for such a breach of condition, nor until a year after the whole mortgage debt becomes due; but the non-payment of interest where it is expressly stipulated for, is no less a breach of condition here than in England; or than the non-payment of an installment of the principal. In a word, the interest is part of the subject of the mortgage debt. It belongs not to it by tacking, it is not an incident of the debt, but *pro tanto,* it is the debt itself. The

parties anticipated it at a fixed rate of increase and it was just as sure to accrue as time was to last, and they put it in the mortgage as part and parcel of the debt which it was the office of the mortgage to secure. There it remains, and a judgment at law for it must have the same effect as a judgment for any other part of the mortgage debt. There is no room for a distinction between a judgment for the interest and a judgment for an installment of the principal. Both are judgments for part of the mortgage debt. A distinction here would be arbitrary and without a difference; but on a judgment for an installment of the principal a virtual foreclosure of the mortgage is effected by a sheriff's sale as we have seen—the equity of redemption in the mortgagor is extinguished and the legal estate still in him is transferred—and the lien of the mortgage is divested. It follows as a necessary conclusion that the same consequence must attend a sheriff's sale of the mortgaged premises made upon a judgment obtained for the interest."

On consideration of all the foregoing cases we are of opinion that Wiltsie's statement is correct, namely, that the better doctrine seems to be that a mortgage may be foreclosed in consequence of default of payment of interest. In this jurisdiction we have never had such legislation as was adopted in Pennsylvania, as stated in *West Branch Bank v. Chester.* Our constitutional development, when Hawaii was independent, was on rather different lines from those followed in California. We have adopted the common law of England as the basis of our jurisprudence, which of course includes the fundamental doctrines of the English court of chancery. When, therefore, we find an authoritative statement of what the common law is, we ought to follow it, unless the question is controlled by local usage or the decisions of this court. There is no reason why the language of the mortgage sued upon should be given other than its natural construction. It provides for foreclosure on the happening of either of three contingencies: (a) the failure to pay the sum secured by the mortgage, (b) a failure to pay the interest thereon, (c) a failure to otherwise comply with the agreements

contained in the mortgage. If the construction contended for by the appellant is correct, no remedy at all would be possible in the case of the third contingency, to wit, failure to comply with the agreements contained in the mortgage. Such construction should be adopted as would give effect to each one of the three provisions set out in the mortgage, if possible.

The case of *Howell v. Western Railroad Co.,* 94 U. S. 463, is conclusive upon the question of the right of the plaintiff to a sale of the entire property. This was a case for the foreclosure of a mortgage to secure bonds, default having been made in the payment of interest. The court held that a stipulation printed on the bond that the same should mature in six months after default in the payment of any interest coupon was void in consequence of the terms of the statute under which these bonds were issued. The court then held: "The company, therefore, had a right to mortgage their property for the payment of these installments of interest as well as principal, and to make it one of the provisions of the mortgage, that it might be foreclosed if these installments were not paid as they fell due. There can, in fact, be but one decree of foreclosure of the same mortgage on the same property, and it is a necessity of that foreclosure, under the principles of the court of chancery, that all the sums secured by that mortgage must be protected according to their priority of lien. We are of opinion, then, that there is due from the railroad company to plaintiff the amount of his overdue and unpaid coupons. For this sum, whatever it may be, he has a right to a decree *nisi,* according to the chancery practice,—a decree which will ascertain the sum so due, and give the company a reasonable time to pay it, say ninety days or six months, or until the next term of the court, in the discretion of that court. If this sum is not paid, the court must then order a sale of the mortgaged property, with a foreclosure of all rights subordinate to the mortgage, with directions to bring the purchase money into court. If the case proceeds thus far, the plaintiff will have a lien on the money thus paid into court, not only for his overdue coupons, but

for his principal debt, and it must be provided for in the order distributing the proceeds of the sale."

It is contended by appellant that the mortgaged premises should be sold in lots and not as a whole. Plaintiff claims, however, that such a sale would be detrimental, and that the property would bring less in lots than as a whole. We think the showing made by plaintiff supports this view. The property was sold by plaintiff as a whole. It had been used by him as a whole. He should not be now exposed to the danger of having one or two lots sold out of the middle of the estate, and then being obliged to bid in the remainder. The detriment of having the estate cut up by having small lots sold out of it might be very great. In this case the land was subdivided in small lots by the mortgagor after the date of the mortgage. This does not entitle him to demand a sale in lots according to his map. Wiltsie, Mortgage Foreclosures, Sec. 492. Under the circumstances of this case we think the plaintiff is entitled to a sale of the estate as a whole.

The decree should be amended by a provision allowing redemption by the payment of the amount of interest in arrears and costs at any time before sale. *Jugers v. Cotton,* 13 Wis. 374. Upon payment of interest due and costs the foreclosure proceedings would then abate.

The decree properly provides for a cash sale. Judicial sales should not be made on credit unless by consent of the parties. Wiltsie, Mortgage Foreclosures, Sec. 482. The provisions in the mortgage for sales on credit by the mortgagor have no bearing at all upon the question of a foreclosure sale by the court. As is pointed out in *Scheibe v. Kennedy,* 64 Wis. on p. 568, in order to give a court of equity the right to maintain an action to foreclose a mortgage it is not necessary that the mortgage should provide for such foreclosure. The jurisdiction does not depend on contract. The contract between the parties as to sale of lots prior to default is a matter entirely apart from the question of jurisdiction and of authority to be exercised by the court by virtue of its inherent power.

The counsel fee awarded should be disallowed. In the absence of a stipulation in the mortgage for the payment of counsel fees, a suit for foreclosure stands on the same footing as any other suit in equity; only the ordinary costs can be taxed. *Birb v. Hall,* 107 Cal. 160.

The plaintiff should be authorized to become a purchaser at the sale, and costs should be allowed him.

The suit is remanded to the circuit judge for modification of the decree entered, and further proceedings in accordance with the views herein expressed.

*Kinney, McClanahan & Cooper* for plaintiff.
*Castle & Withington* for defendants.