## G. W. C. JONES *vs.* S. NORRIS.

### EXCEPTIONS.

HEARING, APRIL 1, 1890.   DECISION, MAY 5, 1890.

JUDD, C.J., McCULLY, BICKERTON, JJ:   DOLE, J., ABSENT.

An estate having been sold on the 21st day of September, with a covenant against incumbrances, and with no express agreement concerning the payment of the taxes:

Held, that the taxes became a fixed charge against the owner of the property on the first of July preceding, although the valuation of the property had not then been determined by the assessor ;

Held, that when a case has been tried by a Justice of the Court with jury waived, the Court in banco will not on a bill of exceptions review his findings of facts, otherwise than it would the verdict of the jury.

OPINION OF THE COURT, BY McCULLY, J.

The case, assumpsit, was heard by Chief Justice Judd, sitting with jury waived. He found in favor of the plaintiff for a certain amount under his claims. The defendant excepts to the findings on the fact and law, by the Justice hearing the case.

The exception to the finding that the defendant should pay the taxes involves a question of law which we will examine first. The language of the Court upon this item of claim is this: " I think the defendant should pay the taxes advanced by the plaintiff. The taxes were assessed as of the 1st of July, but they were not payable until the 15th of November, about two

months after the sale. Taxes are an annual charge upon property by virtue of law and they should be paid by the defendant as the owner of the property, on the same principle that he must pay the annual rents accruing after the sale."

The tax referred to is the real estate and chattel taxes upon the "Kahuku Ranch." This property comprises land and buildings, cattle and horses and other live stock, with grazing, agricultural and dairy tools and implements. It was sold by plaintiff to defendant September 21, 1888, by a deed of warranty and covenant that the premises were free and clear of all incumbrances.

The plaintiff continued to reside on the premises demised for some months after the sale, by an amicable agreement of the parties, the defendant being absent in Honolulu or in California, and during this time the plaintiff, among other payments claimed to be made on defendant's account, paid the taxes.

The contention of the plaintiff is that the tax was not due, and a fixed charge or lien on the estate sold, until after the date of sale, whereby it was not an incumbrance which the plaintiff was bound to pay. The defendant to the contrary.

The Statutes which relate to the assessment and payment of taxes, as they stood at the time of the sale, in respect of dates, are in substance as follows :

The returns by owners of real and of personal property were to be made as of the first of July. C. L. p. 123.

The assessor was appointed on or before the first of July, and it was his duty to notify residents of his district to make their returns to him at a designated place and on dates in the month of July.

The assessor is required to have his tax list open for inspection from September 20th to October 1st, and to give public notice of the time and place or places for this, and persons dissatisfied with the taxation may then take their appeals.

The Courts of tax appeal sit at appointed times in the month of October.

The tax collector calls for the payment of taxes in the month of November and December, not later than the 15th of Decem-

ber, after which date he may levy for unpaid taxes on sufficient of the goods and chattels, or may sue for them.

This Court has held in *Hilo Sugar Company vs. Minister of Finance*, 7 Hawn., 665, that property within the Kingdom on any part of the first of July was taxable to the owner, although it was then on ship board and during that day was transported abroad, affirming the case of *Brewer & Co. vs. Tax Collector*, 6 Hawn., 554. No stronger case could be presented of the application of the liability which attaches on the first day of July. Our Statutes make no difference between real and personal property in respect to the charge of the tax being upon the owner, at the date selected for the falling of the tax, the first of July, although the payment of the tax upon real estate is secured notwithstanding the sale or transfer of it, by attaching a liability to the real estate itself. The debt of the tax is still upon the owner. The act of assessment must necessarily be subsequent to the day when the ownership is fixed. The obligation is perfect at that time to pay an amount which shall be determined by the assessor, subject to the action of the Appeal Board. The assessor has not to asceraain who may be the owners of the property of his district at any other date, or at the date of the completion of his assessment list, on or before the 15th of September. If that were the case, what would be the force of the provision that the ownership shall be reported as it stood on the first of July? There is no provision of the Statute for reporting to the assessor the changes in ownership which may be made during the time of making up the assessments, and he is not required to find them out. We have observed above that real and personal property are treated alike. For an illustration of the confusion which would arise in following a fugitive ownership, take the case of a thousand dollars cash in the possession of A. on the first of July, and, instead of taxing him for that whenever the assessment is completed, it has to be taxed in the hands of those to whom it has passed subsequently and may be at the date when the assessment of different individuals may be entered. But our law imposes no such difficulty. The work of the assessor relates to the first of July

and the charge is fixed on that day, whatever may be the subsequent date when the assessor makes up the assessment of individuals and completes the entire district.

In the case before us the tax was upon both real and personal property. It cannot well be contended, and it has not been, that the tax on the personal property does not adhere to the owner of it July 1st. We see no reason to support the proposition that that portion of the tax which was on the real estate was fixed at any subsequent date. It cannot be supported by the provision that in case of transfer of real estate the tax may be held as a lien upon it, for that is merely an additional or cumulative remedy beyond the provision that levy may be made upon the goods and chattels for the taxes due by an individual, whether upon real or personal property. The tax-collector looks to the plaintiff personally for the taxes on the property owned or possessed by him on the first of July, and may sue him, or levy upon his goods and chattels, or for that portion of the tax which is laid on the real estate he may attach it, even after its sale. The covenant in the deed protects the purchaser, if this latter remedy is pursued.

In support of the views above expressed we may cite the general observation made in Hilliard on Taxation, p. 171: "Assessments must be made against the party who owns the property on the day in each year in which the assessment is by law to commence, quoting from *State vs. Hardin*, 34 N. J., 80. The practical effects of a different construction were confusion in the transfers of property, hindrance in the ordinary transactions of business, and difficulty in rendering a full and true account of rateable property by the owners thereof whenever the assessors might call for it."

The findings of the Chief Justice in respect to the other items held to be made on the defendant's account are all dependent on questions of fact, and we consider that must stand, unless set aside for such reasons as would set aside the verdict of a jury.

As we reverse the finding of the Chief Justice which made the defendant liable for the taxes, this amount, $367.04, must

be subtracted from the sum of $667.36½, for which the plaintiff recovered judgment below, leaving the sum of $300.32½, for which sum, with costs and commissions, the plaintiff may take judgment.

*W. O. Smith*, for plaintiff.

*F. M. Hatch*, for defendant.