MARK A. ROBINSON *v.* CHARLES T. BAILEY, COM-
MISSIONER OF PUBLIC LANDS OF THE TER-
RITORY OF HAWAII.

No. 1590.

SUBMISSION UPON AGREED FACTS.

ARGUED JUNE 3, 1925.                          DECIDED JUNE 9, 1925.

PETERS, C. J., PERRY AND LINDSAY, JJ.

STATUTES—*construction—retrospective operation.*

    Statutes are to be construed as having only a prospective opera-
tion unless the purpose and intention of the legislature to give
them a retrospective effect is expressly declared or is necessarily
implied from the language used.

SAME—*same—same—contract with homesteader.*

    The United States statutes of May 27, 1910, and July 9, 1921,
amending section 73 of the Organic Act of this Territory, are not
to be construed as operating retrospectively so as to invalidate
the provisions of a contract entered into between a homesteader
and the Territory in 1909 relating to sale of the property and
disposition of the proceeds in case of nonperformance by the
homesteader and cancellation of the agreement by the Territory.

OPINION OF THE COURT BY PERRY, J.

    This is a submission on agreed facts, presented origi-
nally in this court under sections 2371 to 2374, R. L. 1925.
The facts agreed upon are as follows:  On January 18,
1909, under and in pursuance of the provisions of sec-
tion 73 of the Organic Act as then existing and section
276, R. L. 1905, the Territory of Hawaii and one Emmet
C. Winston entered into an agreement relating to the sale
by the Territory and the purchase by Winston of a cer-
tain tract of land therein more particularly described
situated at Pupukea-Paumalu on this island and contain-
ing an area of 60.7 acres.  The agreement recited that the

purchase price for the land would be the sum of $1335 payable in certain instalments and that in consideration of the payment of the first instalment of $66.75 and of the covenants and conditions of the contract Winston was thereby authorized and empowered to take immediate possession of the land and to occupy and use the same subject to certain detailed terms set forth in the instrument and that "ten (10) years after the date of sale or at any time thereafter, if all the covenants and conditions have been observed and performed, of which observance and performance the purchaser shall make affirmative proof, the purchaser shall be entitled to a patent conveying said land in fee simple;" that "in case of default in the performance of any of the above covenants or conditions the commissioner" (meaning the commissioner of public lands of the Territory who represented the Territory in the execution of the instrument) "may, with or without legal process and without notice, demand or previous entry, take possession of said land and thereby determine the estate created" by the agreement; and that "in case of such forfeiture, said land shall be sold at auction, either as a whole or in parcels, for cash or on terms of time payments, in the discretion of the commissioner; and if such sale shall result in an advance on the original price, the original purchaser shall receive therefrom the amount of his payments to the government on account of purchase, without interest and a pro rata share in such advance in proportion to the amounts of his payments. If such sale shall result, however, in a less price than the original, the amount returnable to him shall be charged with a pro rata amount of such decrease proportioned to the amounts of his payments." The word "purchaser" as used in the agreement was therein defined "to mean the said Emmet C. Winston, his heirs and those who may hold under him with the consent of the commissioner." The agreement

was by its own terms made assignable with the written consent of the commissioner of public lands but not otherwise.

With the written consent of the commissioner and the approval of the governor of the Territory, Winston on June 10, 1912, in writing assigned to Mark A. Robinson, the plaintiff herein, "all the right, title and interest which, under said special agreement No. 415, Lot 3B," (being the agreement above referred to) "I have in the following described land," describing the same land which was the subject of the original agreement.

The entire purchase price required by the terms of the agreement was paid by Winston and the plaintiff but the plaintiff failed to comply with that term of the agreement which required him to "maintain his home and reside upon said land at least five (5) years during the first ten (10) years after the date of sale" (meaning the date of the holding of an auction at which Winston was determined to be the person with whom the agreement of sale would be entered into by the Territory) "and no period of less than six (6) months of continuous residence at said home shall be held to be part of said five (5) years." Because of this default the commissioner on September 27, 1923, cancelled the agreement, declared a forfeiture of the estate of the plaintiff and took possession of the property in behalf of the Territory. On December 1, 1923, the plaintiff demanded of the commissioner that, in view of the cancellation of the agreement by the commissioner, the property be sold by the commissioner and the proceeds thereof be disposed of, all in compliance with the provisions of section 276, R. L. 1905. This the commissioner refused to do, claiming that section 276 had been repealed and rendered ineffective by two amendments made by Congress to the Organic Act, one of May 27, 1910, and one of July 9, 1921. The parties hereto "pray a deci-

sion and judgment of this court as to whether the defendant is required to sell said property at public auction as provided in section 276 of the Revised Laws of 1905." This is the only question at present before this court for determination.

Section 73 of the Organic Act, as it stood in 1909 when the contract in question was entered into, provided "that the laws of Hawaii relating to public lands * * * except as changed by this Act, shall continue in force until Congress shall otherwise provide." Section 276, R. L. 1905, in force at the date of the contract, provided that the commissioner of public lands may with the consent of the governor "sell public lands not under lease in parcels of not over six hundred acres, at public auction upon part credit and part cash, and deliver possession under an agreement of sale containing conditions of residence on or improvement of the premises sold, or of payment by instalments or otherwise of the purchase price, or all or any of such conditions;" and further provided as follows: "And in case of default in the performance of such conditions, the commissioner may, with or without legal process and without notice, demand or previous entry, take possession of the premises and thereby determine the estate created by such agreement. In case of such forfeiture, such land shall be sold at auction either as a whole or in parcels, for cash or on terms of time payments in the discretion of the commissioner; and if such sale shall result in an advance on the original price, the original purchaser shall receive therefrom the amounts of his payments to the government on account of purchase, without the interest and a pro rata share in such advance in proportion to the amounts of his payments. If such sale shall result, however, in a less price than the original, the amount returnable to him shall be charged with a pro rata amount of such decrease proportioned to the amounts of his pay-

ments.   The treasurer is hereby authorized to pay the amount returnable to the outgoing tenant, upon the requisition of the commissioner, out of any funds available for such purpose.   Which agreement shall entitle the purchaser to a land patent of the premises upon the due performance of its conditions."

The amendment of May 27, 1910, is too lengthy to be here recited in full.   In substance, however, after reenacting the opening sentence of section 73 as it stood in 1909, and as above recited, it contained provisions in considerable detail essentially different from those theretofore existing for the disposition of public lands to homesteaders and others and enumerated certain inhibitions against the disposition of public lands under stated circumstances. It provided, among other things, that "no sale of lands for other than homestead purposes, except as herein provided, * * * shall be made."

Under the law as it stood on January 18, 1909, the agreement entered into on that day providing, among other things, for the sale of the land in case of default on the part of the homesteader and for the disposition of the proceeds in the method there prescribed was authorized and valid.   No contention to the contrary is presented in this case.   So, also, it is unnecessary to consider whether the provisions of section 276 relating to a sale and disposition of the proceeds are to be deemed as incorporated in the contract of the parties on the ground that it was the law at that time and that the contract must have been entered into with reference thereto.   The indisputable fact is that those provisions were *in haec verba* actually incorporated in the written agreement under consideration as terms of that agreement.   That part of the contract, as much so as the remainder of it, is now binding upon the parties unless, as contended on behalf of the Territory, the amendments of 1910 and 1921 operated retrospectively

and rendered these particular provisions of the contract nugatory or void.

It may be assumed, as is probably the case, that under the provisions of section 73 of the Organic Act as amended by the Acts of May 27, 1910, and July 9, 1921, such a term as this, relating to sale and disposition of proceeds, could not have been lawfully included in the contract. It is one of the elementary principles of statutory construction that "all statutes are to be construed as having only a prospective operation unless the purpose and intention of the legislature to give them a retrospective effect is expressly declared or is necessarily implied from the language used. In every case of doubt, the doubt must be solved against the retrospective effect." 36 Cyc. 1205-1208. "The principle is too well established to need the citation of authorities, that no law will be construed to act retrospectively unless its language imperatively requires such a construction." *Auffm'ordt* v. *Rasin,* 102 U. S. 620, 622. The amendments of 1910 and 1921 do not expressly provide that they shall have retrospective operation upon contracts entered into by the Territory with homesteaders prior to the passage of those amendments. There is no language in the amendments which directly or indirectly indicates an intention on the part of Congress that they should have any such operation or that valuable rights of property, such as the rights of Winston and Robinson under this contract undoubtedly are, should be taken away by these amendments without due compensation. On the contrary such an inference is fairly negatived by the statements in the Act of 1910 that "no person shall *hereafter* be entitled to receive any * * * special homestead agreement" or other agreements relating to land except in the ways provided in the amendments, that "no land for which any such * * * agreement shall *hereafter* be issued" shall be disposed of in certain ways mentioned and that "any land in respect

of which any of the *foregoing* provisions shall be violated shall forthwith be forfeited and resume the status of public land,"—as well as by the statements in the Act of 1921 substantially like the foregoing with the exception that the words "after May 27, 1910," are substituted for the word "hereafter" wherever it occurs.   If Congress had intended that all contracts, valid when made, theretofore issued in conformity with laws that were being by the amendments repealed or amended should be by the amendments nullified and valuable property rights thereby taken away from homesteaders and others, it would have said so in appropriate language.   No such intention is discoverable in the language of the amendments under consideration.

In this view it is unnecessary to consider whether Congress could constitutionally pass such amendments as these with the retrospective effect claimed for them by the Territory.

In our opinion it is the duty of the commissioner of public lands to comply with the requirements of the plaintiff's contract relating to sale of the property and disposition of the proceeds.   Judgment will be entered accordingly.

*H. L. Wrenn* (*J. L. Coke* with him on the briefs) for plaintiff.

*C. B. Dwight,* Second Deputy Attorney General (also on the brief), for defendant.