DAVID L. OLESON *v.* WILLIAM BORTHWICK, TAX COMMISSIONER OF THE TERRITORY OF HAWAII.

No. 2256.

ARGUED JANUARY 29, 1936.                    DECIDED MAY 7, 1936.

COKE, C. J., BANKS AND PETERS, JJ.

OPINION OF THE COURT BY COKE, C. J.

The above cause is submitted by the parties to this court on an agreed statement of facts. These facts may be summarized as follows: David L. Oleson is a taxpayer and resident of the city of Honolulu and William Borthwick is the tax commissioner of the Territory. These parties are designated "taxpayer" and "commissioner" respectively. On March 20, 1935, the taxpayer filed with the commissioner a return of his income received in the calendar year 1934 as required by chapter 65, R. L. 1935, showing the receipt of a net taxable income of $3747.90,

the tax payable thereon to the Territory under said chapter being the sum of $74.96, which amount the taxpayer duly paid to the commissioner. On November 30, 1934, certain regulations were promulgated by the commissioner which purported to require every taxpayer who received any dividends during the calendar year 1934 to file with the commissioner on or before December 31, 1935, an information return showing the amount of such dividends. On the 6th day of November, 1935, pursuant to said regulations, the taxpayer filed with the commissioner a "Report of Information" disclosing that the taxpayer, during the calendar year 1934, had received from various local corporations dividends amounting to $650.50. On December 13, 1935, the commissioner, under authority which he claims was conferred upon him by Act 120, L. 1935, levied an assessment against the taxpayer on the corporate dividends received by him during the calendar year 1934 as aforesaid and on the same date notified the taxpayer of such levy, the amount of tax being $13.01.

The claims of the taxpayer as set forth in the submission are: "(1) That Act 120, 1935 Session Laws, does not impose a tax upon dividends received by the taxpayer during the calendar year 1934; (2) That in the event that said Act is construed to impose a tax upon dividends received by the taxpayer during the calendar year 1934, then said Act is unconstitutional and void." The constitutionality of the Act was not urged in the taxpayer's briefs nor by his counsel at their oral argument and may be considered as abandoned. The bases of the taxpayer's contention are, (a) that Act 120, L. 1935, operates alone upon taxable dividends received by a taxpayer during the calendar year 1935 and succeeding years; that to construe the Act to include taxes on dividends accruing to a stockholder during the taxable year 1934 is to give the Act a retrospective operation prohibited

generally by the rules of statutory construction and inhibited specially by section 5, R. L. 1935, and (b) that no machinery is set up by which the assessment and collection of the tax may be enforced.

The commissioner, on the other hand, contends that the purpose and legal effect of Act 120 was to levy a tax on all income representing corporate dividends received by a taxpayer at any time within the calendar year next preceding the first day of January, 1935; that taxes on 1934 income were not imposed in that year but were imposed, assessed, and became due on the first day of January, 1935, and because chapter 65, R. L. 1935, as amended by Act 120, became effective on the latter date, income on corporate dividends received during the preceding year was specifically made subject to the tax. It is thus to be observed that the sole question involved in this submission is whether Act 120, L. 1935, to the extent that it includes dividends in the definition of gross income, which prior to the amendment were expressly excluded from such definition, applies in computing the territorial income taxes imposed and assessed against the taxpayer on January 1, 1935. .

It is agreed between the parties that judgment—either that the taxpayer pay no additional territorial tax or that the taxpayer should pay an additional tax in the amount of $13.01—may be entered herein by the court in accordance with its views on the agreed facts.

Chapter 65, R. L. 1935, imposed a tax upon net income of every individual doing business in or receiving or deriving income from sources within the Territory of Hawaii. Taxable year is defined as the calendar year or the fiscal year ending during such calendar year on the basis upon which the income is computed by the taxpayer. The taxable year ends on the 31st day of December of the year in which the income is received. This chapter expressly

excludes from gross income, among other items, "dividends upon the stock of any corporation, national banking association or insurance company, received by an individual or corporation." Taxes upon income during any calendar year were imposed and became due on the first day of January of the following year and payable on the succeeding 20th of March. The chapter requires that every individual having a taxable income computed on the basis of a calendar year shall make and file a verified return thereof on or before the 20th day of March following the close of the calendar year within which the income was received. Failure to make such return subjects the taxpayer to penalties prescribed in the chapter. The chapter further provides that a penalty of ten per cent shall be added to all amounts of all territorial taxes and a delinquent tax and penalty remaining unpaid fifteen days after the date of delinquency shall bear interest at the rate of two-thirds of one per cent for each month or fraction thereof until paid. Penalty and interest shall become a part of the tax and collected as such. Because the taxpayer in the present case made his return upon the basis of the calendar year, any further reference to a fiscal year is unnecessary and would merely lead to confusion.

Act 120, L. 1935, which finally passed the legislature on April 29, 1935, and was approved by the governor on May 9, 1935, amends title IX, chapter 65, sections 2030 and 2033, R. L. 1935. The provisions of the Act, amendatory of section 2033, expressly repealed that portion of the section which excluded dividends received on the stock of corporations from the taxpayer's gross taxable income and specifically included "all dividends received having a situs for taxation within the Territory" in the taxpayer's gross taxable income for the purpose of computing the net taxable income of the taxpayer. The fourth and last section of Act 120 reads as follows: "This Act

shall take effect as of January 1, 1935. Provided, however, that this Act shall become effective only in the event Senate Bills Nos. 24, 39, 145 and 215 become law." It is not disputed that the senate bills referred to were duly enacted and thus Act 120 became effective, and it is conceded that the dividends received by the taxpayer in 1934 were derived from sources within the Territory and distributed therein to a local resident. Hence we are not called upon in this proceeding to define the meaning and effect of the phrase "dividends received having a situs for taxation within the Territory."

It must be conceded that legislation may, subject to certain qualifications which are not material to these issues, provide that the effective date of an Act precede the date of its approval. Income tax laws may be expressly retroactive and such has been the uniform practice of Congress since 1919 with exception of the Revenue Act of 1935. See for example the Revenue Act of 1921, 42 Stat. L., pt. 1, Ch. 136, p. 227; Act of 1924, 43 Stat. L., Ch. 234, p. 253; Act of 1926, 44 Stat. L., pt. 2, Ch. 27, p. 9; Act of 1928, 45 Stat. L., Ch. 852, p. 791; Act of 1932, 47 Stat. L., Ch. 209, p. 169; Act of 1934, 48 Stat. L., pt. 1, Ch. 277, p. 680; and for similar legislation in the Territory of Hawaii, in addition to Act 120, L. 1935, see Act 33, L. 1909; Act 164, L. 1913; Act 202, L. 1915.

There is neither Federal nor territorial inhibition against the imposition of a tax computed upon income accrued prior to the effective date of the Act. Unlike the imposition of *ad valorem* taxes on real and personal property no doubt exists of the legislative power to impose income taxes which are computable on income received during a period anterior to the existence of the statute imposing the tax. See *Drexel & Co.* v. *Commonwealth,* 46 Pa. 31, 40; *Stockdale* v. *Insurance Companies,* 20 Wall. 323, 331; *Brushaber* v. *Union Pac. R. R.,* 240 U. S. 1, 20;

*State* v. *Frear*, 134 N. W. (Wis.) 673; *Locke* v. *New Orleans*, 4 Wall. 172, 173; *Maine* v. *Grand Trunk Ry. Co.*, 142 U. S. 217, 229; *Woods* v. *Lewellyn*, 252 Fed. 106, 108; *Billings* v. *United States*, 232 U. S. 261, 282; *Flint* v. *Stone Tracy Co.*, 220 U. S. 107; *United States* v. *Bennett*, 232 U. S. 299; *Apokaa Sugar Co.* v. *Wilder*, 21 Haw. 571.

The prohibition contained in section 5, R. L. 1935, imposes no restraint upon the power of the legislature to enact retroactive legislation. The statute enunciates a rule of statutory construction where a contrary intention does not appear. It is not a limitation upon legislative power. *In Re Kalana*, 22 Haw. 96, 107.

Practically every Revenue Act passed by the Congress of the United States imposes income taxes computed upon net income received prior to the date the Act went into effect. The Revenue Act of 1913, 38 Stat. L., pt. 1, Ch. 16, p. 114, became effective October 4, 1913. The tax thereby imposed and due in 1914 was computed upon income from March 1 to December 31, 1913. The effective date of the Revenue Act of 1916, 39 Stat. L., pt. 1, Ch. 463, p. 756, was September 9, 1916, and the tax due in 1917 was computed upon the net income of the calendar year 1916. The Revenue Act of March 3, 1917, 39 Stat. L., pt. 1, Ch. 159, p. 1000, was effective March 3, 1917, and the tax payable in 1918 was computed upon the calendar year ending December 31, 1917. The effective date of the Revenue Act of 1917, 40 Stat. L., pt. 1, Ch. 63, p. 300, was October 4, 1917, and the tax for the year 1918 was computed upon the net income of the calendar year 1917. The effective date of the Revenue Act of 1918, 40 Stat. L., Ch. 18, p. 1057, was February 25, 1919, and the tax payable in 1919 was computed upon the net income of the calendar year 1918. Though the later Revenue Acts, like the amendatory Act in the instant case, were expressly made retroactive, they also in every instance, except the Revenue Act

of 1935, imposed a tax computed upon income received prior to the existence of the Act. The approval date of the Revenue Act of 1924, *supra,* was June 2, 1924, and the tax payable in 1925 was computed upon the net income of the calendar year 1924. The approval date of the Revenue Act of 1926 was February 26, 1926, and the tax for the year 1926 was computed upon the net income of the calendar year 1925. The approval date of the Revenue Act of 1928 was May 29, 1928, and the tax for the year 1929 was computed upon the net income of the calendar year 1928; the approval date of the Income Tax Act of 1932, *supra,* was June 6, 1932, and the tax for the year 1933 was computed upon the net income of the taxable year 1932. The approval date of the Revenue Act of 1934, *supra,* was May 10, 1934, and the tax for the year 1935 was computed upon the net income for the calendar year 1934.

The Income Tax Acts of Hawaii are of like tenor. The effective date of Act 65, L. 1896, was the date of publication (approval date, June 12, 1896, and necessarily published subsequently) and the taxation period was the year ending June 30 next preceding the time for levy (July 1, 1896). The effective date of Act 20, L. 1901, approved April 30, 1901, was July 1, 1901, and the taxation period was the year preceding. The effective date of Act 87, L. 1905, approved April 26, 1905, was January 1, 1906, and was computed upon income for the half year immediately preceding January 1, 1906. The effective date of Act 117, L. 1915, approved April 19, 1915, was January 1, 1916, and was computed upon the net income of the year immediately preceding January 1, 1916. That the effective date of Act 44, 2d Sp. S., L. 1932, approved May 11, 1932, was January 1, 1932, and that the first tax assessable thereunder was the tax of 1933, computed upon the income of the taxable year 1932, merely reflected the

desire of the legislature not to impose the increased tax on corporations of seven and one-half per cent until the year 1933, the rate under the pre-existing law in respect to corporations being five per cent. (R. L. 1925, § 1389.) Otherwise Act 44, 2d Sp. S., L. 1932, might have been, with the same legal effect, made effective on January 1, 1933, the first taxable year being expressly defined in the Act as the calendar year 1932.

There is no difference in principle between a retrospective law and a retroactive law, either of which is one which takes away or impairs vested rights acquired under a different law or creates a new obligation, imposes a new duty or attaches a new disability in respect to transactions or considerations already past. If a retrospective law is a criminal statute which imposes a punishment for an act which was not punishable when it was committed or changes the rules of evidence by which less or different testimony is sufficient to convict it becomes what is defined as an *ex post facto* law and is violative of the Federal Constitution. So, also, a retrospective law which impairs the obligation of contracts is void for the same reason. While, therefore, it cannot be questioned that the legislature has the power to enact a retrospective law unless it contravenes some constitutional inhibition, it is also a recognized rule that retrospective laws are not favored and all laws will be construed as prospective unless the language employed imperatively requires a contrary construction. *Robinson* v. *Bailey,* 28 Haw. 462; *Auffm'ordt* v. *Rasin,* 102 U. S. 620; *United States* v. *Heth,* 7 U. S. 398, 413; *Sohn* v. *Waterson,* 84 U. S. 596; *Reynolds* v. *McArthur,* 27 U. S. 416; *United States* v. *American Sugar Co.,* 202 U. S. 563. That this canon of statutory construction applies to tax statutes is universally recognized.

These rules of construction, however, have no application to the case at bar for the same reason that Act 120 by its express terms is made retrospective to and including the first day of January, 1935. Neither by the language employed nor by invoking any known rule of statutory construction can the Act be deemed to be retrospective to any time anterior to January 1, 1935.

Another recognized rule of statutory construction is that an amended Act is to be construed, after the adoption of the amendment, as if the statute had been enacted originally in its amended form. (59 C. J., § 647, p. 1096.) An amendment to a statute as to all acts subsequently done so thoroughly becomes a part of the original statute that the latter will be construed as it stands after the amendment is introduced. Act 120 did not operate independently but became merged in the amended statutes as of January 1, 1935, and upon that date and hence thereafter, the statutes, as amended, must be regarded as a single Act. *Blair* v. *Chicago,* 201 U. S. 400, 475; *Farrell* v. *State,* 54 N. J. L. 421; *Holbrook* v. *Nichol,* 36 Ill. 161; *Conrad* v. *Nall,* 24 Mich. 274. Moreover the amendment bears the same relation to other existing laws on the same subject as did the laws that were amended. *State* v. *Gray,* 144 So. 349.

In the final analysis it is the intention of the legislature as manifested by the language employed in the Act itself that leads to the solution of the question involved. In our opinion the amendment of title IX and of chapter 65, R. L. 1935, in addition to the amendment of sections 2030 and 2033, chapter 65, is no less significant than the provision that the Act take effect as of January 1 preceding the date of its approval.

Title IX, R. L. 1935, upon the adoption of the revision of that year presumably included all the territorial laws pertaining to taxation,—similarly chapter 65, R. L. 1935,

included all the law of the Territory pertaining to income taxes. Under the provisions of section 2049, chapter 65, there was incorporated in chapter 65, by reference, the provisions of the real property tax law contained in chapter 61 pertaining to the levying, assessing, etc., of income taxes under the later chapter and not inconsistent therewith.

Hence it is apparent that the legislature intended that Act 120, L. 1935, should have all the force and effect, as of January 1, 1935, which could be attached to it not alone by reason of the provisions of section 2049, R. L. 1935, but by reason of its being amendatory of all laws in respect to taxation in general and the chapter pertaining to income taxes in particular.

The reference to title IX as "presumably" embracing all the law of the Territory pertaining to taxes may occasion surprise. The commission appointed to prepare the Revised Laws of 1935, is guilty of a vital omission from the definition of "taxpayer" as defined in Act 44, 2d Sp. S., L. 1932, of which chapter 65, R. L. 1935, is the revision. In the definition of that term as now appears in section 2030, R. L. 1935, there is omitted the additional language: "The first taxable year, to be called the taxable year 1932, shall be the calendar year 1932, or any fiscal year ending during the calendar year 1932." Counsel for the taxpayer, upon argument, made much of the point that Act 120, L. 1935, dissimilar to many territorial and Federal income tax laws, failed to expressly define the calendar year to which the term "taxable year" applied. But the omission does not alter the legal effect of chapter 65, R. L. 1935. It may be considered as containing the omitted sentence. Its omission from the revision does not change the force of the original definition of "taxable year" as contained in section 10 (b), Act 44, 2d Sp. S., L. 1932 (*People* v. *Graves,* 193 N. E. [N. Y.] 259, 260), and the

definition of "taxable year" as contained in chapter 65, R. L. 1935, may be considered with the qualification that the first taxable year under the chapter was the calendar year 1932, or any fiscal year ending during the calendar year 1932. And, as we shall hereafter more at length point out, title IX, chapter 65, R. L. 1935, as amended by Act 120, L. 1935, must, as of January 1, 1935, be deemed to include in the paragraph defining "taxable year" the omitted sentence, namely, "the first taxable year, to be called the taxable year 1932, shall be the calendar year 1932, or any fiscal year ending during the calendar year 1932."

Why was January 1, 1935, instead of the date of its approval, made the effective date of the amendment? The answer is obvious. Under the income tax law, January 1 of every year is the date as of which all taxes are imposed, assessed and become due upon the net income *of the preceding calendar year*. Obviously then the selection of January 1, 1935, as the effective date of the Act, was not by reason of any necessity that the imposition of the tax be coextensive with the taxable year in which dividends were received but because January 1, 1935, similarly as every January 1 in every year, under the income tax law was the taxation date and the date as of which the assessment must be made and upon which the income taxes were due upon the net income of the preceding calendar year 1934. It was within the powers of the legislature at any time in the year 1935 by appropriate legislation to impose a tax payable in 1936 computed upon 1935 net income, including dividends received in 1935. Indeed, to include dividends received during the taxable year 1934, on gross income of that year, it was not necessary that the law imposing the tax be in existence during the taxable year 1934. All precedents and authorities are to the contrary. It was clearly within the powers of the legislature at any

time during the year 1935 to impose a tax upon 1934 income, including dividends received during the latter year. The Congress of the United States did just that thing in the case of the Revenue Act of 1926. It went further than that in the instance of the Revenue Act of 1918. The last-named Act was passed on February 24, 1919, became effective the day thereafter and imposed an income tax on income for the calendar year 1918.

The 1935 legislature adopted January 1, 1935, as the effective date of the amendment for the reason that January 1, 1935, was the taxation period for 1935 taxes, based on 1934 income as the term "taxation period" is employed in the administration regulations of title IX, R. L. 1935, and in chapter 61 of the same title, expressly pertaining to real property taxes, made a part of the income tax law by section 17, Act 44, 2d Sp. S., L. 1932 (R. L. 1935, § 2049).

Section 1907, chapter 61, R. L. 1935 (subparagraph 3), imposes upon the tax commissioner the duty "to assess, pursuant to law, all real property for taxation and to make any other assessment by law required to be made by him." Section 1934, R. L. 1935, provides that "taxes shall be levied upon real property each year as of January 1 of such year." This requirement under the provisions of section 17, Act 44, 2d Sp. S., L. 1932 (R. L. 1935, § 2049), requires all assessments of income taxes to be made as of January 1 of each year. *Re Taxes O. R. & L. Co.*, 28 Haw. 261, 265; *Re Taxes H. M. von Holt*, 28 Haw. 246; *Wilder* v. *Hawaiian Trust Co.*, 20 Haw. 589. The Act of assessment, due to the fact that the taxpayer's returns need only be filed by March 20 following the close of the calendar year (Act 44, 2d Sp. S., L. 1932, § 11 [d] [1]), must necessarily be subsequent to the taxation period (January 1) but the actual assessment relates back to the taxation period (January 1) and the assessment is

fixed as of that date, whatever may be the subsequent date when the assessor actually makes the assessment. *Jones* v. *Norris,.*8 Haw. 71, 73, 74; *Cooper* v. *Island Realty Co.,* 16 Haw. 92, 95.

Section 2046, R. L. 1935 (Act 44, 2d Sp. S., L. 1932, § 16), provides: "The total amount of income tax imposed by this chapter shall be due on January 1 and payable on March 20 following the close of the calendar year." The statutory liability of the taxpayer fixes the effective date of the tax. "The obligation is perfect at that time [January 1] to pay an amount which shall be determined by the assessor, subject to the action of the appeal board." *Jones* v. *Norris, supra.* See also *Brewer* v. *Luce* (decision of single justice), 6 Haw. 554, approved by the full court in *Hilo Sugar Co.* v. *Minister of Finance,* 7 Haw. 665, 671.

· By making Act 120, L. 1935, amendatory of title IX, chapter 65, sections 2030 and 2033, R. L. 1935, effective January 1, 1935, there was therefore effective as of January 1, 1935, an income tax law providing that "there shall be assessed, levied, collected and paid for each taxable year upon the net income of every individual * * * a tax equal to the sum of the following: * * * per centum of the amount of *net* income in excess of * * * dollars but not in excess of * * * dollars [here follows graduated scale];" (R. L. 1935, § 2032); that " 'net income' means the amount remaining after subtracting the total of deductions as defined in section 2034 from gross income computed under section 2033" (R. L. 1935, § 2030); that "gross income includes * * * also all dividends received having a situs for taxation within the Territory" (R. L. 1935, § 2033, Am., Act 120, § 2, L. 1935); that " 'taxable year' means the calendar year or the fiscal year ending during such calendar year upon the basis of which net income is computed under this chapter. * * * *The first tax-*

*able year, to be called the taxable year 1932, shall be the calendar year 1932, or any fiscal year ending during the calendar year 1932"* (R. L. 1935, § 2030, as it should be, the italicized portion having been erroneously omitted) ; that "the total amount of income tax imposed by this chapter shall be due on January 1" (R. L. 1935, § 2046) ; that the "duties contained in chapter 61 for * * * assessing * * * the tax imposed thereunder * * * shall be * * * exercised for * * * assessing * * * the tax imposed under the authority of this chapter" (R. L. 1935, § 2049). Under that state of the law and bearing in mind the legal effect of the rule of its creation there can be no doubt that the legislature intended that on January 1, 1935, there was assessable and due as of that date a tax upon all income received by individuals during the taxable year 1934. It is around the taxation period as a hub that the wheel of income taxes revolves. It is the taxation period that determines the status of the taxpayer. And by making Act 120, L. 1935, retroactive as to the taxation date (January 1, 1935) all of the provisions of law as applicable on that date must synchronize.

A similar situation developed in respect to Act 33, L. 1909, approved March 22, 1909, known as the conservation tax. It imposed an income tax of two per cent in addition to the income tax law then in effect. In 1913 the legislature passed Act 164. It was approved April 30, 1913, and took effect upon its approval. By section 1 of the Act the tax was reduced from two to one per cent and by section 6 of the Act it was provided: "This Act shall be in effect from the date of its approval, and relate retrospectively to give full effect to the provisions herein contained with respect to taxes for the first taxation period hereunder; and shall continue in force to and until the 31st day of December, 1915 * * *." The question arose whether or not this Act was in effect on January 1, 1913,

and the reduced rate applicable on that date upon income received during the calendar year next preceding 1912. And in the case of *Apokaa Sugar Co.* v. *Wilder,* 21 Haw. 571, 573, the question was submitted to this court on an agreed statement of fact: "Whether the said Act 33 of the Laws of 1909 as amended by Act 147 of the Laws of 1911 has been modified by said Act 164 of the Laws of 1913 so that the rate of said 'Conservation Tax' is one per cent. instead of two per cent. upon the net profit or income of said corporation derived during the taxation period ending on the 31st day of December, 1912." This court answered the question in the affirmative, holding in effect that the first taxation period having been defined as (p. 574): "The year immediately preceding the first day of January of each year in which such tax is payable;" qualified by: "Provided, that the first taxation period under this Act shall be the year immediately preceding the first day of January, 1909;" by the original Act and those Acts amendatory thereof was created a "complete and harmonious statutory scheme covering the entire period from and including the year 1908 to and including the year 1915;" and that the first taxation period under Act 164 was the year 1912 (see page 575). Similarly in the instant case the original Act provided that the first taxation period be the calendar year 1932. Hence, on the first of January, 1935, the preceding taxable year was 1934; and Act 120, L. 1935, being retroactive as of January 1, 1935, the amendment in respect to dividends applied similarly as the amendment in respect to the rate of tax in the amendatory Act (Act 164, L. 1913).

Cases from other jurisdictions construing local income tax laws are peculiar to themselves and are not of any particular value as precedents further than they illustrate the effect of amendatory Acts upon existing income tax laws. There was in force in the State of Virginia an in-

come tax law imposing a rate of one per cent. Subsequently, on September 5, 1919, an amendatory Act was passed increasing the rate. The taxpayer reported its net income for the year ending December 31, 1918, and claimed that the legal rate of taxation on its income of 1918 was only one per cent under the previously existing law and that the rates prescribed by the Act of September 5, 1919, could not be lawfully imposed on its income earned in the calendar year 1918. The Act of September 5, 1919, in terms provided that "the taxes imposed by this Act shall be assessed and collected for the year nineteen hundred and nineteen and thereafter, until otherwise provided by law." The taxpayer's argument was largely based on the statute which fixed February 1 of each year as the date for the annual assessment of all taxable property and claimed that inasmuch as on that date in 1919 the legal rate imposed upon incomes earned in 1918 was one per cent, therefore the imposition of the increased rate under the amendatory Act was illegal. The court held: "It must be observed that the language of the statute under review refers specifically to taxes for 1919 and thereafter. * * * *Incomes are taxed, not in the year such income is received, but in the succeeding year. These taxes are for 1919, though based upon and measured by the amount of income received in 1918*. The taxes assessed in 1919 are taxes for that year, and manifestly it is upon incomes liable to taxation in 1919 that the increased rate is imposed." *Anderson Bros. Inc.* v. *Commonwealth,* 120 S. E. (Va.) 860, 861.

The imposition of an income tax computed upon income of the taxpayer accruing prior to the effective date of the Act is not retrospective in its operation. True, it has been loosely referred to as such but on reason and authority the adoption of the net income of an anterior period for a present tax is but a method of determining

*the measure of the tax.* There can be no legal objection to adopting any anterior calendar year or fiscal year as a measure of a tax for after all the net income of a taxable year is the measure of the tax and not the tax. Hence it follows, as indicated *supra,* that Act 120 had no retroactive application prior to January 1, 1935. This is also illustrated with great clarity in *Drexel & Co.* v. *Commonwealth, supra.* The statute in the *Drexel* case required "all stock, bill, and exchange brokers and private bankers, on or before the first Monday of December next, and on or before the same day in each year thereafter, to make a written return, under oath or affirmation, to the auditor-general of this Commonwealth, in which return shall be exhibited and set forth the full amount of receipts from commissions, discounts, abatements, allowances, and all other profits arising from the business during the year ending with the thirtieth day of November *preceding* the date of such annual return, and shall forthwith pay into the state treasury three per centum on the aggregate amount contained in such return for the use of the Commonwealth." Construing the effect of this statute, the court said: "It is clearly therefore perfectly constitutional as well as expedient, in levying a tax *upon profits or income,* to take *as the measure of taxation* the *profits or income of a preceding year."* Similar language is used by Mr. Justice Miller in *Stockdale* v. *Insurance Companies, supra.* In that case an income tax was imposed, computed on income of an anterior period. The court held: "The right of Congress to have imposed this tax by a new statute although *the measure of it* was governed by income of the past year cannot be doubted." In *Maine* v. *Grand Trunk Railway Co.,* 142 U. S. 217, 229, the court was dealing with an excise tax imposition computed upon gross transportation receipts for an anterior period. The court held: "There is no levy by the statute on the re-

ceipts themselves either in form or fact; they constitute, as said above, simply the means of ascertaining the value of the privilege conferred." See also *Flint* v. *Stone Tracy Co.*, 220 U. S. 107, 146; *Cooper* v. *United States*, 280 U. S. 409; *Lynch* v. *Hornby*, 247 U. S. 339; *Harvard Law Review*, 48, pp. 592, 597; *State* v. *Frear, supra.*

In the case of *Alexander* v. *Board of Revenue*, 121 So. 390, the court approved a prior decision of the supreme court of Alabama to the effect that the general assembly of the State has power to impose taxes and may take the profits or income of a business for a preceding year *as the measure of the assessment.* See also *People* v. *Graves, supra.* In *Dodge* v. *Nevada Nat. Bank*, 109 Fed. 726, cited by counsel for the taxpayer, the court pointed out that the assessment date was March 1. The Act became effective on March 14. The Act was not made retroactive. The court observed that had the Act been in effect on the assessment date *"the question we have in hand would not have appeared."* In the case at bar the Act was in effect on the assessment date.

Another case relied upon by the taxpayer is *Commonwealth* v. *Lorillard Co.*, 105 S. E. 683. This is a Virginia case where the taxpayer's appeal was sustained because the law provided no means of ascertaining the appellant's taxable income as distinguished from nontaxable income. That this case is not in conflict with the general rule above referred to is very clearly pointed out in a subsequent decision by the same court in *Anderson Bros.* v. *Commonwealth, supra.* Our attention is also called by counsel for the taxpayer to *People* v. *Miller*, 71 N. E. 930, a New York case. The taxpayer was sustained by a majority opinion, the reasoning of which is not impressive. The case, however, is distinguishable from the case at bar, first because the Act was not expressly made retrospective and hence the presumption of prospectivity prevailed, and second

the taxation date does not appear. There is a vigorous dissenting opinion by Van, J., which in our judgment contains the better reasoning. It is interesting to observe that in 1905, following the decision in the *Lorillard* case, the legislature of the State of New York further amended the existing law to expressly include in the term "gross amount of premiums" all premiums on policies, certificates and renewals received during the preceding calendar year and imposed a tax thereon instead of upon premiums for any business done in the State during such year and made the tax payable on July 1, 1905, which under the terms of the Act was computed on 1904 premiums. The constitutionality of the 1905 amendment was raised in the case of *People* v. *Kelsey,* 101 N. Y. S. 902, on the ground that it imposed a property tax and because it was retroactive. The court said: "It is wholly unimportant whether the tax was for the privilege of carrying on business within the state 'during the year 1904,' so long as it is evident that it was the tax payable July 1, 1905. * * * The tax is in no sense a tax upon the relator's property or business 'during the year 1904,' but it was a tax for the exercising of such privileges, based, as the legislature had a right to base it, upon its gross premiums received here during such year; that is, the prior calendar year. The tax is not a retroactive one, but was imposed upon the relator because it was here within this state exercising such privileges at the time it was required to report and at the time when the tax was payable. * * * The Act of 1905 was not the first one imposing a franchise tax upon foreign insurance corporations. * * * The Act imposing it, so construed, is not in any sense retroactive, and therefore the arguments aimed against its validity from a constitutional point of view have no force." This case was affirmed by the court of appeals of New York, 80 N. E. 1116. Many cases cited and relied upon by the taxpayer

in this case involve retrospective statutes attempting to impose taxes upon property or statutes in conflict with state constitutions prohibiting retrospective legislation. Of course an *ad valorem* tax on property cannot be made retrospective by statutory construction nor is any retrospective statute valid in those jurisdictions where there is a constitutional inhibition against retrospective legislation. But an income tax is not a property tax and in the Territory of Hawaii we have no constitutional barrier to the enactment of retrospective legislation.

We venture to suggest that had Act 120 been passed at a special session of the legislature in 1934 and expressly made prospective as of January 1, 1935, no one would have appeared to challenge the obvious fact that the amendment on its effective date would have imposed a tax computed upon 1934 income based upon the definition of gross income as contained in the amended Act. Logically there could be no difference between an Act thus made expressly prospective and the Act in the instant case expressly made retrospective. Upon three separate occasions the legislature of the Territory passed amendatory income tax statutes but did not incorporate into the amendatory Acts any reference to the first "taxable year" upon which the amendment should operate. It relied, as it had the right to do, upon the general rule of statutory construction that the amendment was to be considered in relation to all the other pertinent provisions of law of which the amendment formed a part, assured that the definition of the taxable year and the first taxable year, the date of imposition of the tax, the assessment and date of liability would control the operation of the amendment. The amendatory Acts to which we refer are as follows: Act 64, L. 1909, approved April 6, 1909, expressly effective January 1, 1910; Act 163, L. 1921, approved April 25, 1921, expressly effective January 1, 1922;

Act 53, L. 1931, approved April 9, 1931, expressly effective December 31, 1931.

The failure of counsel for the taxpayer to recognize the distinction between "taxable year" and "tax date" as those phrases apply to income taxes has led them afield in this case. Under chapter 65, as amended by Act 120, on January 1, 1935, the "taxable year" was the calendar year 1934. The "tax date" was January 1, 1935. At the latter date the tax on the taxpayer's income received during the year 1934 was imposed and levied and became due and any assessments made at any time on such income reverted back to the tax date. The law, as it existed at that time, specifically imposed a tax on corporate dividends, hence it was the plain official duty of the commissioner to assess the tax involved in this submission.

The taxpayer's counsel further argue that "if Act 120 be construed as including corporate dividends received in 1934, then it is impossible for the commissioner to administer the Act." They contend that had the legislature intended to tax 1934 dividends it would have set up appropriate machinery for enforcing the tax in 1935. They assign, in support of these claims, that it is impossible for the taxpayer receiving dividends in 1934 to comply with the provisions of subparagraph 7, section 2040, relating to returns or of section 2046 (b), relating to the due date of the tax and the date on which the same is payable; that the taxpayer under those circumstances could not elect to take advantage of the installment payments permitted by section 2046 (c); that though powerless to comply with the provisions as to returns the taxpayer would be subject to a penalty for failure to file a return within the time prescribed under subparagraph 6, section 2040, that the taxpayer would be liable to prosecution for a misdemeanor under subparagraph 3, section 2042; that he would similarly be subject to penalties for delinquent

taxes under section 2046 (d); that no authority either express or implied existed for the promulgation by the commissioner of the regulation of November 30, 1935; that in the legislature exclusively, and not in the commissioner, reposed the power to fix the date when taxes were due; that the commissioner was without authority to vary the time of assessment, time of returns or time and manner of payment; and finally that the commissioner could not collect the tax. The taxpayer also presents many abstract hypotheses under which he claims the Act, as amended, could not operate.

In the submission it is agreed that if this court finds that Act 120 imposes a tax upon dividends received by the taxpayer during the calendar year 1934 and further finds that the Act is not unconstitutional and void judgment may be entered in the alternative either that the taxpayer pay no additional tax or that he pay an additional tax in the amount of $13.01. The contention that the Act was unconstitutional having been abandoned by the taxpayer and holding as we do that the Act in question imposed a tax upon dividends received by the taxpayer during the year 1934 it follows as a matter of course that judgment must be rendered against the taxpayer for the amount of the tax in dispute.

Such defects, if any, as may exist in the machinery of the law for the assessment and collection of the tax upon taxable dividends sought to be imposed thereby become material under the agreement of facts only to the extent that the question may assist in arriving at the intention of the legislature as expressed in the Act. Section 2040, R. L. 1935, requires individual returns upon forms prescribed by the commissioner, stating specifically the items of the gross income of taxpayers and the deductions and credits allowed by law, and by subparagraph 7 thereof requires that "returns made on the basis of the calendar

year shall be made and filed on or before March 20, following the close of the calendar year. Returns made on the basis of a fiscal year shall be made and filed on or before the twentieth day of the third month following the close of the fiscal year." Section 2046 (b), R. L. 1935, provides: "The total amount of income tax imposed by this chapter shall be due on January 1 and payable on March 20 following the close of the calendar year, or, if the return be made on the basis of a fiscal year, then the tax shall be due on January 1 in such fiscal year and shall be paid on the twentieth day of the third month following the close of the fiscal year."

It is a presumption of law that the legislature in passing Act 120 did so with full knowledge of the existing terms and provisions of the income tax law of which the Act was amendatory. (59 C. J., § 600.) If the existing laws were sufficient in and of themselves to enforce the provisions of the amendment the absence of additional administrative provisions in the face of express retroactivity of the Act could obviously have no effect.

Although section 2040, R. L. 1935, prescribed the form, contents and time and place for filing returns the contingency of the necessity of other or additional returns was anticipated by subparagraph 2, section 2041. It provides: "Whenever in the judgment of the commissioner necessary, he may require any taxpayer by notice served upon him to make such returns or render under oath such statements as the commissioner deems sufficient to show whether or not the taxpayer *is liable to tax* under this chapter." The term "this chapter" necessarily includes this chapter as amended. This the commissioner did by printed regulations dated November 30, 1935, effective on that date in which he prescribed that "every taxpayer who received any dividends during the calendar year 1934, or in the case of taxpayers keeping their books according to

a fiscal year, every such taxpayer who received any dividends during the fiscal year ending subsequent to January 1, 1935, shall file with the tax commissioner or with the assessor for the division in which he resides or maintains his principal office, an informational return on the form to be furnished by the tax commissioner showing the amount or amounts of dividends received during such calendar year or fiscal year as the case may be. All informational returns shall be filed as hereinabove provided on or before December 31, 1935, unless the time for filing be extended by the tax commissioner." The general powers reposed in the tax commissioner by subparagraph 3, section 1907, and the special powers conferred upon him in respect to income taxes under section 2051, are ample justification for the regulation of November 30, 1935. Section 1907 (13) provides in respect to the duties and powers of the commissioner: "To make such rules and regulations as he may deem proper effectually to carry out the purposes for which his office is constituted and to regulate matters of procedure by or before his department." To exercise the power of making assessments conferred upon him generally by subparagraph 3, section 1907, and to make an assessment against the taxpayer unquestionably are "purposes for which his office is constituted and to regulate matters of procedure by or before his department." The time within which returns were to be filed and the tax became payable having expired those provisions became *functus* and a regulation requiring an informational return was "needful" and "for the enforcement of this chapter" and was "not in conflict with the express statutory provisions to which the same were applicable."

The legislature recognized the contingency which might arise where the commissioner discovers unassessed income and expressly authorized him to assess it. Section 2042

provides: "If the commissioner discovers from the examination of the return or *otherwise* that the income of any taxpayer, or any portion thereof, has not been assessed, he may assess the same * * *." The absence of qualifying terms indicated under what circumstances further or additional assessments may be made, the use of the words "or otherwise" taken in connection with the general language of subparagraph 2, section 2041, "whether or not the taxpayer is liable to tax under this chapter" removes all doubt of the applicability of the law to income taxable at the taxation date under the existing law as well as income taxable at the taxation date by reason of any legislation retroactively effective upon the taxation date. Obviously there was no legal impediment to the taxpayer's complying with the regulation of November 30, 1935, and making an informative return required thereby.

Nor were additional administrative provisions of law necessary to assess and collect the additional tax to which the taxpayer became liable by reason of Act 120, L. 1935. As already pointed out, income taxes are assessable and due as of January 1 of each year; returns are to be filed on or before March 20, succeeding the calendar year and, where the taxable year is the calendar year, are payable on March 20 following the close of the calendar year. The income tax law is silent as to any specific date of assessment of income taxes but by reason of the applicability of chapter 61, R. L. 1935, as heretofore pointed out and especially section 1933, all assessments of income taxes should be made by the commissioner on or before April 1 for the year in which the tax is payable. *In re Assessment of Income Taxes Ewa Plantation Co.,* 18 Haw. 530, 539, 540. The requirement, however, as to time of assessment in view of the purposes of subparagraph 2, section 2041, and subparagraph 2, section 2042, as heretofore explained and the provisions of subparagraph 1, sec-

tion 2050, may be considered merely directory and not mandatory. This section provides: "The amount of income taxes imposed by this chapter and also the amount of income taxes imposed by any preceding law of the Territory shall be assessed or levied within five years after the return was filed and no proceeding in court without assessment for the collection of any of such taxes shall be begun after the expiration of such period."

All the provisions of chapter 61, as well as the provisions of chapter 65, are available for the collection of income taxes when assessed. Section 2047 provides: "The assessments made under the authority of this chapter and the assessment books and delinquent tax lists made in accordance with the provisions of chapter 61 shall be *prima facie* evidence of the correctness of the tax imposed under this chapter."

It is idle to say that the taxpayer, under the provisions of the law as amended by Act 120, L. 1935, would be subject to penalties under the provisions of subparagraph 6, section 2040, and subparagraph 3, section 2041, and to the penalties for delinquent taxes under subparagraph d, section 2046. Subparagraph 6, section 2046, is predicated upon the failure, neglect or refusal to make and file a return as required, within the time prescribed. Section 2041 (3) is predicated upon the failure to keep books of account as required in section 2041 (1) and to make special returns and statements as required by section 2041 (2). It does not appear that the taxpayer has failed to keep regular books of account and it does not appear that he has failed to render the special return as required by the regulation of November 30, 1935. On the contrary, it is admitted in the agreed statement of facts that he did make a return in compliance with said regulation. Section 2046 (d) is a penalty imposed upon delinquent taxes. No delinquency in that regard appears. A mere reading

of the law in respect to payments negatives the imposition of any penalty for delinquent taxes that were not payable prior to the passage of the amendment.

In the event of additional assessment the due date of the tax is the twenty-first day after the date the notice of assessment was made in accordance with law. Indeed, the section refers to "interest and penalties, *if any.*" But clearly no interest could accrue nor penalties attach in respect to an additional tax. imposed by virtue of an amendatory law which was not enacted until all time limitations for filing returns and payment of taxes, as required by the law as it existed prior to the amendment, had expired.

We are of the opinion that the income tax laws as they existed prior to the amendment were sufficient unto themselves to enforce the amendment and that chapter 65, R. L. 1935, as amended by Act 120, L. 1935, was enforceable in respect to taxable dividends received by taxpayers during the taxable year 1934.

Counsel for the commissioner, by incorporation or reference thereto in their brief, attempt to bring into this proceeding and have considered by the court certain extraneous records including the report of the senate ways and means committee having under consideration the proposed legislation which culminated in the passage of Act 120 and other official reports bearing on the subject. These records, they claim, conclusively disclose a legislative purpose and intent to include 1934 corporate dividends within the purview of the amendatory Act and it is urged that they be resorted to by this court in the aid of the construction of the Act, citing *United States* v. *St. Paul M. & M. R. Co.,* 247 U. S. 310.

This cause is presented to us under a submission on an agreed statement of facts pursuant to section 3616, R. L. 1935. The statute provides: "Parties to a question in

794

difference which might be the subject of a civil action in the tax appeal court, circuit court or supreme court may, without action, agree upon a case containing the facts upon which a controversy depends and present a submission of the same to the supreme court."

In the present proceeding the parties have agreed upon the facts to be submitted to the court and upon which the questions of law should be determined. The agreement contains no reference to the reports to which counsel for the commissioner refer. This court, under the terms of the statute, is without authority to consider any matters of fact which are not agreed to by both parties to the cause. "The parties to this case have taken advantage of the provision of the statute authorizing the submission to the supreme court of any question of difference between persons that might become the subject of a civil action. This statute affords an expeditious method of settling litigation. By it, however, the parties prescribe the limits of judicial inquiry by the agreed statement of facts. The court is not bound nor expected to go beyond the questions raised by the parties." *Rapid Transit Co.* v. *Tram Co.*, 13 Haw. 363, 377. See also 60 C. J. 685. We must therefore decline to consider these extraneous official documents.

Our conclusion being that Act 120, L. 1935, imposes a tax upon dividends received by the taxpayer during the calendar year 1934, it follows that the Territory is entitled to judgment against the taxpayer in the amount of $13.01.

Judgment will be entered accordingly.

*H. L. Wrenn* and *M. E. Winn* (*Smith, Warren, Stanley & Vitousek; Anderson, Marx, Wrenn & Jenks* and *Smith, Wild, Beebe & Cades* on the briefs) for the taxpayer.

*G. P. Kimball,* Deputy Attorney General (*W. B. Pittman,* Attorney General, with him on the briefs), for the tax commissioner.